**RECEIVED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

MAY 0 4 2017

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MOHAMUD ABDI AHMED and 2WAYTRADING, LLC,<br><br>Defendants. | Case No. 17sc1478 JNE/KMM<br><br>**COMPLAINT** |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## SUMMARY

1. Defendant Mohamud Abdi Ahmed ("Ahmed") and his company 2waytrading, LLC ("2waytrading") are defrauding their clients by promising excessive investment returns and principal security, in order to entice the clients to give Ahmed access to trade in their brokerage accounts. Before 2waytrading, Ahmed controlled a stock trading and financial services business named Shidaal Express, Inc. ("Shidaal") that engaged in an investment fraud targeting Somali-Americans. In connection with his activities with Shidaal, the SEC obtained an injunction against Ahmed's company, and Ahmed also pleaded guilty to one count of wire fraud (18 U.S.C. §1343) and was sentenced to 21 months in prison and three years of supervised release until May 7, 2017. Ahmed's current conduct with 2waytrading is not only a fraud on his clients, it also violates his supervised release terms, which, among other things, require him to avoid engaging in any profession that includes fiduciary responsibility.



COMPLAINT                                         1

2. Defendant 2waytrading is an entity controlled by Ahmed that Ahmed's relative formed in December 2014, shortly after Ahmed's release from prison. 2waytrading offers clients stock tips for a monthly fee or discretionary portfolio management for a $2,500 lifetime "commitment" fee plus 20% of profits. The firm attracts clients through postings on the social media platform StockTwits and its own website, falsely promising safety of principal and double-digit percentage profits. In direct correspondence with clients, Ahmed repeats these lies, such as telling one former client that she would receive $10,000 to $20,000 monthly on her $50,000 investment account. Ahmed also conceals his prior misconduct from 2waytrading's clients, instead touting himself as an "expert" with 15 years' of investing experience at a firm that only operated for less than three years. Ahmed requires that his clients provide access to their online brokerage accounts – by turning over their user IDs and passwords to him – and fund those accounts with at least $30,000 that he then "trades" on their behalf. His trading decisions thereafter are not safe at all—he invested one client's entire account balance in risky options that lost 80% of their value in less than one week.

3. By engaging in this conduct, Defendants are violating, and unless enjoined, will continue to violate the antifraud provisions of the federal securities laws. Therefore, with this action, the SEC seeks emergency relief against Defendants, including a temporary restraining order, an asset freeze, accountings and schedules, expedited discovery, and an order prohibiting the destruction of documents. The SEC also seeks preliminary and permanent injunctions, disgorgement with prejudgment interest and civil penalties against Defendants, and an injunction prohibiting them from taking any action with respect to any securities

brokerage accounts in which Defendants are not the named owner, including accessing, exercising investment discretion in, or withdrawing any funds or assets from such accounts.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) & 78aa(a), and Sections 209(d), 209(e)(1) and 214 of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-9(d), 80b-9(e)(1) & 80b-14.

5. Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged in this complaint.

6. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a), and Section 214 of the Advisers Act, 15 U.S.C. § 80b-14, because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district. In addition, venue is proper in this district because Defendants Ahmed and 2waytrading reside in this district.

## THE DEFENDANTS

6. **Mohamud Abdi Ahmed**, age 53, is a resident of Shakopee, Minnesota, and describes himself to clients as 2waytrading's "lead trader," although in practice he appears

COMPLAINT 3

to have complete control over the 2waytrading's operations including its online and social media content and all correspondence with clients. Ahmed has never held any securities licenses or been registered with the SEC.

7.  **2waytrading, LLC** was formed as a Minnesota limited liability company in December 2014 with a principal place of business in Oakdale, Minnesota. Ahmed controls 2waytrading's operations, holding himself out as the firm's "lead trader" and serving as the exclusive interface with clients, including recommending trades, accessing the clients' accounts, and making trades on their behalf. The company's status was terminated by the State of Minnesota in March 2016, but the company has continued to offer stock tips and portfolio advising, which it advertises through online and social media sites. The company has never been registered with the SEC.

## THE ALLEGATIONS

**A.    Ahmed, His Criminal Past and His Current Firm, 2waytrading**

7.  In 2010, the SEC brought an enforcement action against Ahmed and his former firm, Shidaal, in connection with an investment fraud.

8.  Shortly thereafter, Ahmed pleaded guilty to related criminal charges. He was sentenced to 21 months' imprisonment and three years of supervised release. Ahmed's supervised release began on May 8, 2014 when he was released from prison, and ends on May 7, 2017.

9.  Ahmed's supervised release terms require him: not to engage in a profession that includes fiduciary responsibility; to provide complete disclosure of personal and business financial records to the probation officer as requested; and not to open checking

accounts or lines of credit without approval of the probation officer.

10. Ahmed formed 2waytrading just seven months after his release from prison for his role in the Shidaal fraud.

11. Neither Ahmed nor 2waytrading is registered with the SEC or any state authority as an investment adviser. Ahmed is also not associated with a registered investment adviser.

**B.   Defendants' Unregistered Investment Advice to Clients**

12. Despite not being registered as an investment adviser, from December 2014 to the present, Ahmed, through 2waytrading, has acted as an investment adviser to individual clients who rely on him to make stock recommendations, evaluate their portfolio, or engage in trading in their accounts.

13. Ahmed offers clients two types of advisory services focusing on options trading through 2waytrading.

14. First, for a monthly fee of $99, Ahmed offers to provide alerts regarding options trading ideas. According to one client's testimony, this first service essentially consists of email blasts to enrolled clients with suggestions regarding options trades.

15. Second, Ahmed offers to control the trading in the clients' accounts as part of 2waytrading's "Managed Small Account" or "MSA" program.

16. To enroll in the MSA program, Ahmed sends agreements by email to his clients requiring that they: (1) pay a $2,500 nonrefundable "commitment" fee to 2waytrading's PayPal account, (2) give Ahmed their user name and password to their online brokerage account, (3) have an account balance of greater than $30,000 in their brokerage

account, with no other open positions, and (4) pay 2waytrading 20% of profits from trading in the account. Clients are told that they will be able to review trades before they were made, but that Ahmed will have exclusive control over trading in the account.

17. Ahmed pressures clients to choose the MSA service. He tells clients that the MSA program will take the complexity out of options trading, stating "if u are new to option trading u can sign up Managed Small Account where we execute on your behalf so u learn by doing."

18. He also exerts high pressure tactics by making claims that there are limited spots available for the MSA program. Ahmed told one client "We are adding one MSA before end of this month, and demand is high." Ahmed addresses client worries about the high upfront fee of $2,500 by claiming "U will make it in ur first month."

19. At least 32 clients have either paid fees to 2waytrading's PayPal account for MSA services (the $2,500 "commitment" fee) and/or provided Ahmed with access to their online brokerage accounts.

20. 2waytrading's PayPal account has received over $125,000 in fees since its inception. Moreover, 2waytrading maintains its own brokerage account in which it has conducted over $7 million notional value in securities trades since 2015.

21. Ahmed holds himself and 2waytrading out as investment advisers, and Ahmed's clients in the MSA program believe he is serving as their investment adviser.

22. One former client testified that she entrusted and believed Ahmed would represent her interests in that capacity. However, although she explained to Ahmed her financial situation and her goals—that she was a single mother of four who was looking to invest a small inheritance that comprised 20% of her net worth and that as a result she could not

sustain a high degree of risk—within a week of entrusting Ahmed, he had squandered almost the entirety of her account value by using all available funds to purchase risky put options.

23. Ahmed conceals his connection to 2waytrading, perhaps to avoid detection by his probation officer. The limited liability company formation documents for 2waytrading filed with the State of Minnesota, and bank and brokerage account opening documents for 2waytrading, list Ahmed's then 19-year-old relative as the firm's sole manager and partner.

24. Despite this, Ahmed was the one who controlled 2waytrading's operations.

25. Numerous business records list Ahmed's name as a controlling person: Ahmed's name and address are on the 2waytrading PayPal account used to collect client fees; Ahmed used his name for a StockTwits profile associated with 2waytrading; Ahmed identifies himself as the firm's lead trader on his personal LinkedIn profile; Ahmed uses a cellular phone number held in his name as the firm contact number on 2waytrading's website as well as for the 2waytrading's WhatsApp instant messaging account used to communicate with clients; and Ahmed purchased the subscription to StockCharts, a service that generates the technical analysis charts used on 2waytrading's website and StockTwits postings.

26. In addition, clients deal exclusively with Ahmed, with the limited exception of correspondence about clerical matters with Ahmed's teenage relative, whose email signature block identifies her as an "Admin."

**C.     Defendants' Fraud**

27. Ahmed and 2waytrading make numerous material misrepresentations and omissions to 2waytrading's clients and potential clients.

28. First, the Defendants misrepresent Ahmed's background and experience by

failing to disclose his criminal conviction, and inflating his years of trading experience.

29.  On 2waytrading's online and social media platforms, as well as in Ahmed's direct correspondence with clients, Ahmed touts himself as an "expert" with 15 years' investing experience.

30.  Nowhere, however, does Ahmed disclose that he has been convicted of wire fraud, or that the SEC obtained an injunction against his former firm, Shidaal, in connection with their perpetration of an investment fraud. Indeed, Ahmed does not disclose his affiliation with Shidaal at all in his online or one-to-one correspondence.

31.  For example, Ahmed's LinkedIn profile claims that he:

> Has been trading last 15 years and have been writing financial comments last ten years. If one wants to trade along with an expert you find one here, and you can ask portfolio review for free, and any other financial products you are interested in.

32.  Ahmed's LinkedIn profile and other statements to investors all suggest that he has operated 2waytrading for the past 15 years, despite the fact that company was not formed until 2014 and despite the fact that Ahmed spent a portion of that time in prison for investment fraud.

33.  Second, Ahmed and 2waytrading have misrepresented and continue to misrepresent the safety of Ahmed's investing strategy.

34.  Both online and in direct correspondence, Ahmed represents that his options trading strategies are designed to preserve client capital. The 2waytrading website described diversified trading portfolios in which Ahmed only purchased small lots of varied

options. Ahmed tells clients their principal will be safe.

35. Ahmed's options trading strategy are not safe investment strategies. Instead, his investing strategy exposes client principal to extreme risk.

36. In fact, one client's account lost up to 80% of its balance as a result of Ahmed's trading strategy.

37. For that client's account, Ahmed purchased 600 out-of-the money put options. The options were set to expire in mere days. This was effectively a wager that the price of the stock would decrease in value before the expiration date. Rather than decrease, the price of the stock increased during this time.

38. Moreover, although Defendants promised on their 2waytrading website and in direct correspondence that they would vet any trades with the clients in advance, one victim testified that she did not know Ahmed had purchased risky options until after the trade had been executed and significant losses had accrued.

39. Third, Ahmed and 2waytrading have misled and continue to mislead potential clients on 2waytrading's website and in direct correspondence with promises of unrealistic investment returns.

40. The 2waytrading website touts various standard portfolios with average returns of 10-20% per month for a $50,000 portfolio.

41. In addition, the website home page claims that such a portfolio will reach "$62,000 in one month."

42. Likewise, in WhatsApp instant messages from the 2waytrading WhatsApp account, Defendants promised one former client the following:

>  7/16/16, 6:58:24 PM: [Former client]: What has been your average return on managed accounts?
>  7/16/16, 6:58:27 PM: 2 Way Trading: U pay us
>  7/16/16, 6:58:56 PM: 2 Way Trading: Depends on ur risk/reward tolerance
>  7/16/16, 6:59:34 PM: 2 Way Trading: 50k u expect 10-20k.

43. A former client testified that these representations were central to her decision to entrust Ahmed with access to her account, and were ultimately unfulfilled.

44. Ahmed and 2waytrading have not obtained the excessive returns they had promised.

45. Each of these misrepresentations and omissions were material to the Defendants' clients.

46. Any reasonable client would have wanted to know about Ahmed's criminal past. In fact, at least one client testified that she would not have signed up with Ahmed or 2waytrading had that client known the truth about Ahmed's criminal history.

47. Similarly, any reasonable client would have wanted to know that the Defendants were not investing their money in the way they had promised or that the promised returns were not achievable and, in fact, had not been obtained.

48. Defendants obtained money, in the form of the investment advisory fees described above, by means of the misstatements and omissions alleged above.

49. Defendants knew, or were reckless or negligent in not knowing, that they made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

## FIRST CLAIM FOR RELIEF

**Fraud in the Connection with the Purchase and Sale of Securities**

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b)**

**(against All Defendants)**

50. The SEC realleges and incorporates by reference paragraphs 1 through 49 above.

51. As alleged above in paragraphs 27 through 49, among other allegations, Defendants Ahmed and 2waytrading made untrue statements of material fact regarding Ahmed's trading strategy and experience and concealed Ahmed's criminal history and his prior association with a fraudulent investment in order to, among other things, convince clients to entrust their money and brokerage accounts to Ahmed and 2waytrading.

52. By engaging in the conduct described above, Defendants, and each of them, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

53. Defendants knew, or were reckless or negligent in not knowing, that they made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

54. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15

COMPLAINT 11

U.S.C. § 78j(b), and Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

## SECOND CLAIM FOR RELIEF

### Fraud in the Offer or Sale of Securities

### Violations of Section 17(a)(2) of the Securities Act

### (against All Defendants)

55. The SEC realleges and incorporates by reference paragraphs 1 through 49 above.

56. As alleged above in paragraphs 27 through 49, among other allegations, Defendants Ahmed and 2waytrading obtained money in the form of advisory fees by means of untrue statements of material fact regarding Ahmed's trading strategy and experience and concealed Ahmed's criminal history and his prior association with a fraudulent investment in order to, among other things, convince clients to entrust their money and brokerage accounts to Ahmed and 2waytrading.

57. By engaging in the conduct described above, Defendants and each of them, directly or indirectly, in the offer or sale of securities, and by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Defendants knew, or were reckless or negligent in not knowing, that they obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

58. By engaging in the conduct described above, Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

### THIRD CLAIM FOR RELIEF

### Fraud by an Investment Adviser

### Violations of Sections 206(1) and 206(2) of the Advisers Act

### (against All Defendants)

59. The SEC realleges and incorporates by reference paragraphs 1 through 49 above.

60. As alleged above in paragraphs 12 through 26 and 27 through 49, among other allegations, Defendants Ahmed and 2waytrading held themselves out as investment advisers and made untrue statements of material fact regarding Ahmed's trading strategy and experience and concealed Ahmed's criminal history and his prior association with a fraudulent investment in order to, among other things, convince clients to entrust their money and brokerage accounts to Ahmed and 2waytrading.

61. By engaging in the conduct described above, Defendants, and each of them, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce: (a) with scienter employed or are employing devices, schemes or artifices to defraud clients or prospective clients; or (b) engaged in or are engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients.

62. By engaging in the conduct described above, Defendants have violated, and unless restrained and enjoined, will continue to violate, Sections 206(1) and (2) of the

Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

## PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the alleged violations.

### II.

Issue orders and judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, temporarily, preliminarily, and permanently enjoining Defendants, and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act [15 U.S.C. §77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and (2) of the Advisers Act, 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

### III.

Issue orders and judgments, in forms consistent with Rule 65(d) of the Federal Rules of Civil Procedure, temporarily, preliminarily, and permanently enjoining Defendants, and their agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, directly or indirectly, taking any action with respect to any securities brokerage or similar account in which Defendants are not the named

owner, including but not limited to, directly or indirectly, accessing any such accounts, exercising investment discretion, as defined by Sections 3(a)(35)(A) and 3(a)(35)(B) of the Exchange Act, 15 U.S.C. §§ 78c(a)(35)(A) & (B), with respect to such accounts, and withdrawing, removing, transferring, or otherwise disposing of any funds, securities, or other assets from any such accounts.

### IV.

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of the Defendants, requiring accountings and schedules from each of the Defendants, prohibiting each of the Defendants from destroying documents, and granting expedited discovery.

### V.

Grant such other and further relief as this Court may determine to be just and necessary.

### VI.

Order Defendants to disgorge all funds received from their illegal conduct, together with prejudgment interest thereon.

### VII.

Order Defendants to pay civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act, 15 U.S.C. § 80b-9(e).

### VIII.

Retain jurisdiction of this action in accordance with the principles of equity and the

Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

### IX.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: May 4, 2017

/s/ Lynn M. Dean
Lynn M. Dean
David J. Van Havermaat
Brent W. Wilner
444 S. Flower Street, Suite 900
Los Angeles, California 90071
(323) 965-3998 (*telephone*)
(213) 443-1904 (*facsimile*)

John E. Birkenheier
175 West Jackson Boulevard, Suite 1450
Chicago, Illinois 60604
(312) 886-3947 (*telephone*)
(312) 353-7398 (*facsimile*)

Attorneys for Plaintiff
Securities and Exchange Commission

James Alexander (MN No. 166145)
Assistant United States Attorney
District of Minnesota
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Telephone: (612) 664-5600
Jim.Alexander@usdoj.gov
Local Counsel